UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

In Re

Chapter 7
Case No.: 19-75714-reg

RUSSELL FRAGALA

Debtor

------------------------------------------------------------X

MYER'S LAWN CARE SERVICES, INC.      Adv. Proc No.: 19-08150-reg

Plaintiff,

---against---

RUSSELL FRAGALA

Defendant.

## AMENDED COMPLAINT FOR NONDISCHARGEABILITY OF PLAINTIFF'S CLAIM

1. The parties in the above referenced Adversary Proceeding appeared before this Honorable Court, telephonically, on April 2, 2020 to hear Defendant Russell Fragala's, herein (the Defendant/Debtor) Motion to Dismiss Plaintiff's Complaint. Defendant/Debtor asserted that Plaintiff Myer's Lawn Care, Inc., herein (Plaintiff/Creditor)'s Complaint should be dismissed because, allegedly, he is not a Creditor of the Plaintiff/Creditor because he is shielded by a corporate veil and that the allegations in the Complaint, supposedly, do not meet the plausibility standard.

2. Plaintiff/Creditor responded that the debt arose from a contractual dispute which is pending in a Maryland State Court action (SCA), in which Plaintiff/Creditor is suing Defendant/Debtor personally because he had failed to register his corporation in Maryland, therefore no Resident Agent had been named to accept service of process in Maryland. And that he waived any corporate veil defense when he chose to answer the Complaint in the SCA

personally, instead of filing a motion to dismiss claiming a corporate veil defense. Additionally, Defendant/Debtor, as a Person, sued, and is still suing, Plaintiff/Creditor in the SCA, personally, and not as a corporation, alleging Plaintiff/Creditor breached the subject contracts, which he now alleges to this Court that he is not personally liable for the subject debt which arose from those contracts because he is, supposedly, shielded by a corporate veil.

3. If Defendant/Debtor's SCA suit is successful he will be awarded a judgment personally.

4. Finally, in the instant case, Defendant/Debtor, unsuccessfully, personally sued Plaintiff/Creditor for alleged stay violations and identified Plaintiff/Creditor numerous times as a Creditor of Defendant/Debtor. As Plaintiff/Creditor pointed out to this Court, Defendant/Debtor cannot have it both ways. He cannot litigate against Plaintiff/Creditor personally, when it is convenient for him to do so, and then claim he is not personally liable for breaching the same subject contracts he is suing Plaintiff/Creditor for personally, because he is shielded by an alleged corporate veil.

5. Also, as has been established in Plaintiff/Creditor's Oppositions to Defendant/Debtor's Motion to Dismiss and is detailed below, Plaintiff/Creditor's claim that the Debt is nondischargable pursuant to 11 U.S.C. § 523(a)(2) and (6) meets and exceeds the plausibility standard.

6. At the conclusion of the April 2, 2020 hearing the Court authorized the Plaintiff/Creditor to re-plead the Complaint in support of its position that Defendant/Debtor is not shielded by a corporate veil and that the debt owed to Plaintiff/Creditor is nondischargable because it arose from conduct committed by Defendant/Debtor including false pretenses, false

representations, actual fraud, as well as willful and malicious injury. Plaintiff/Creditor, through its undersigned counsel, asserts that, pursuant to 11 U.S.C. § 523(a)(2) and (6), its Claim is non-dischargeable. In support thereof Plaintiff/Creditor incorporates herein the Complaint filed in the instant case and submits the following on information and belief:

## Jurisdiction and Venue

7. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334 and the Standing Order of Reference of the United States District Court for the Eastern District of New York. This action is a core proceeding under 28 U.S.C § 157(b)(2)(A) and the Federal Rule of Bankruptcy Procedure 7001(6). Venue is appropriate in this district as the Debtor filed his bankruptcy here.

## Parties

8. The Plaintiff is a creditor in the underlying chapter 7 case pending in this Court.

9. Defendant, Russell Fragala, is the debtor in the underlying chapter 7 case pending in this Court.

## Summary of Pertinent Facts

10. This case arose from a dispute over contracts, dated November 1, 2016, between Defendant/Debtor, using the name of Russ Fragala Landscape Corporation (Landscape) and Plaintiff/Creditor involving snow removal services Defendant/Debtor contracted Plaintiff/Creditor to provide for 22 Walmart stores located in Maryland (Work Sites) during the winter months starting in November 2016 through March of 2017. Defendant/Debtor had been

awarded the contracts by BrightView Solutions, LLC (BrightView) which is an agent for Walmart. *Complaint* at ¶ 9.

11. Defendant/Debtor has stated that Landscape is registered as a corporation in New York. Therefore, under Maryland law, it is considered a foreign corporation and must register as such with the Maryland State Department of Assessments and Taxation BEFORE it does any intrastate, interstate, or foreign business in Maryland.

12. Landscape, was neither registered as a foreign corporation nor a Limited Liability Company with the Maryland State Department of Assessments and Taxation on the date of November 10, 2016 when the Subcontracts between Plaintiff/Creditor and Defendant/Debtor discussed immediately above were executed. *Complaint* at ¶ 8.

13. Defendant/Debtor Fragala has stated that he is the sole owner of Landscape.

14. Each officer of a foreign corporation which does intrastate, interstate, or foreign business in Maryland without qualifying or registering as required by Subtitle 2 of this title, and each agent of the foreign corporation who transacts intrastate, interstate, or foreign business in this State [Maryland] for it is <u>guilty of a misdemeanor</u> and on conviction is subject to a fine not exceeding $1,000. MD Code, Corporations and Associations, § 7-302 (emphasis added).

15. In October 2016 BrightView inspected the Work Sites to document their conditions before the winter season began. *Complaint* at ¶ 15. BrightView contracted Defendant/Debtor to provide the snow removal services which Defendant/Debtor then subcontracted Plaintiff/Creditor to provide (Subcontracts). *Complaint* at ¶ 9 and Exhibit 1 attached to the Complaint[1]. Among other things, the Subcontracts contain a clause in which Plaintiff/Creditor would only be liability

---

[1] All Exhibits referenced are attached to the Complaint unless otherwise noted.

for damages caused to the Work Sites by the snow removal services it provided (Liability Clause). *Complaint* at ¶ 9 and Exhibit 1.

16. In an Addendum to the Subcontracts, dated November 10, 2016, Defendant/Debtor Fragala agreed to pay a late fee of two percent (2%) per month on balances owing if invoices Plaintiff/Creditor submitted were not paid within 25 days of submission. Please see a copy of the Addendum attached to the *Complaint* as Ex. 2.

17. Plaintiff/Creditor reasonably relied on and was induced to enter into the 22 Subcontracts by the terms expressed in the Subcontracts, which were drafted by Defendant/Debtor, including the Liability Clause which limited Plaintiff/Creditor's liability for damages only to those damages caused by the snow removal activities Plaintiff/Creditor performed.

18. It is undisputed by the parties that between November 3, 2016 and February 9, 2017, Plaintiff/Creditor fulfilled its part of the Subcontracts to provide said services for all 22 Work Sites. *Complaint* at ¶ 11. As of February 9, 2017 Defendant/Debtor had paid Plaintiff/Creditor for all of the snow removal services it had provided, amounting to $210,335.00 save $2,070.00 as memorialized in Ex. 3. Defendant/Debtor attributed the shortage of $2,070.00 to a clerical error which he later cured. The Liability Clause was not invoked by Defendant/Debtor and Plaintiff/Creditor was paid in full and timely without any deductions for damages. Please see a copy of Creditor Myer's Lawn Care Services, Inc.'s Fragala accounting records annexed to the *Complaint* as Ex. 3.

19. The area experienced a significant snow and ice storm on March 3, 2017 so Plaintiff/Creditor resumed snow removal services. *Complaint* at Ex. 3. It reasonably relied on

the terms of the Subcontracts, including the Liability Clause, to do so because recent experience established that the Liability Clause would only make it liable for damages it would cause to the Work Sites and not be charged for damages it did not cause.

20. As a result of the storm Plaintiff/Creditor invoiced Defendant/Debtor $183,460.00, however Defendant/Debtor only paid $127,070.00 leaving an unpaid balance of $58,460.00. *Complaint* at Ex. 3.

21. On August 14, 2019, BrightView was deposed during discovery in the SCA and testified that it had re-inspected the Work Sites on or before June 13, 2017 and found that no damages were caused by the snow removal activities, with the possible exception of minor damage to one cart corral, and that a Walmart manager or assistant manager, at every Work Site, signed statements certifying, at the time the inspections were completed, that no damage had been caused by snow removal activity. *Complaint* at ¶ 18.

22. The BrightView Corporate Designee, Jerry Bender (Mr. Bender), testified that he personally told one of the Defendant/Debtor's employees, Mark Hornstein (Mr. Hornstein), on or before June 19, 2017, that no damage was caused by the snow removal activity, with the possible exception of minor damage to a cart corral. *Complaint* at ¶ 18.

23. By May 10, 2017, BrightView had paid Defendant/Debtor $551,204.99 for the snow removal services that Plaintiff/Creditor had provided, which was the full contract price owed and that no deductions were made for damages. *Complaint* at ¶ 42.

24. It is undisputed that Defendant/Debtor did not disclose to Plaintiff/Creditor that, on or before June 19, 2017, BrightView had told Mr. Hornstein that no damage had occurred or that,

on or before May 10, 2017, he had been paid in full for the snow removal services
Plaintiff/Creditor had provided with no deductions made for damages.

25.   Nearly a month after BrightView had paid Defendant/Debtor in full with no
deductions made for damages to the Work Sites, Mr. Hornstein emailed Plaintiff/Creditor on
June 6, 2017 and stated that he had inspected all of the Work Sites and falsely stated that many
of them had been damaged by its snow removal activity and that the damages had to be repaired
by June 23, 2017 before Defendant/Debtor would pay Plaintiff/Creditor the balance it was owed,
which was $58,460.00. Mr. Hornstein further promised to forward a "comprised" list for all of
the stores detailing what needs to be corrected before Defendant/Debtor would be paid its
$58,460.00. Plaintiff/Creditor never received the "comprised" list. *Complaint* at ¶ 16 and
Exhibit 5.

26.   Plaintiff/Creditor's owner, Robert Myers, emailed Defendant/Debtor Fragala, on
June 10, 2017, and advised him that he had not received the comprised list of repairs needed to
be done by June 23, 2017 but he had received photographs from Mr. Hornstein of damages of
sites that were not Work Sites or of obvious old damages that happened long before the recent
snow season. Plaintiff/Creditor then specifically asked Defendant/Debtor Fragala to disclose any
damage reports he had received from Walmart or BrightView. Defendant/Debtor did not
respond. *Complaint* at ¶ 17 and Exhibit 6.

27.   Plaintiff/Creditor then retained the undersigned who wrote Mr. Hornstein on June 23,
2017 asking, among other things, for copies of any reports or documentation he had of the
alleged damages. Mr. Hornstein did not respond. A follow up letter was sent on July 7, 2017
and again Mr. Hornstein did not respond. *Complaint* at ¶ ¶ 19 and 20 and Exhibits 8 and 9.

28. The next event was a letter issued by Rompel Alam, Esquire (Attorney Alam) dated, August 11, 2017, (August 11 Letter) sent to the undersigned, whereby Attorney Alam, on behalf of the Defendant/Debtor's wholly owned entity Landscape, accused Plaintiff/Creditor of damaging many of the Work Sites to the extent that the monies owed to Plaintiff/Creditor would not cover the costs to repair the damages. Instead, allegedly, the costs of the repairs would exceed the balance owed to Plaintiff/Creditor and Plaintiff/Creditor will owe Defendant/Debtor. *Complaint* at ¶ 22 and a copy of the August 11 Letter is attached to the *Complaint* as Exhibit 10. The August 11 Letter was sent some two months after BrightView had told Defendant/Debtor that no damages had occurred and three months after BrightView had paid Defendant/Debtor in full, $551,204.99, making no deductions for damages.

29. In the August 11 Letter Attorney Alam referred to discussions she had previously had with the undersigned regarding the liability of Defendant/Debtor in this matter as a Person versus a Corporate entity because Landscape had not been registered in Maryland as a foreign corporation. Her position was that Maryland law does not make a principle of a foreign corporation personally liable for the actions of the corporation because the foreign corporation did not register in Maryland. Further, Attorney Alam threatened the undersigned that if Russ Fragala is sued personally she will file for sanctions and attorney fees. Exhibit 10.

30. Plaintiff/Creditor's position was that all of the events from which the issue arose occurred in Maryland therefore the proper forum for a lawsuit to resolve the issues was Maryland. However, it could not serve the process papers of a lawsuit on a foreign corporation in Maryland if that foreign corporation had not registered in Maryland because when a foreign corporation registers in Maryland it is required to designate a Registered Agent that is authorized to accept service of process papers if that foreign corporation is sued in Maryland. Therefore,

until Landscape registered in Maryland as a foreign corporation, it could not be served process papers because it did not designate a Resident Agent to accept service of process papers. In that case, suing Defendant/Debtor personally was the only viable option Plaintiff/Creditor had because Defendant/Debtor could be served personally whereas Landscape could not be served because it had not designated a Resident Agent in Maryland to accept service.

31. As stated above, each officer of a foreign corporation which does intrastate, interstate, or foreign business in Maryland without qualifying or registering as required by Subtitle 2 of this title, and each agent of the foreign corporation who transacts intrastate, interstate, or foreign business in this State for it is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $1,000. MD Code, Corporations and Associations, § 7-302 (emphasis added).

32. Additionally, the August 11 Letter clearly infers that Defendant/Debtor was considering filing a lawsuit against Plaintiff/Creditor for damages it allegedly caused to the Work Sites. However, MD Code, Corporations and Associations, § 7-301, Noncomplying Corporation, Maintenance of Suit, holds: "If a foreign corporation is doing or has done any intrastate, interstate, or foreign business in this State without complying with the requirements of Subtitle 2 of this title, neither the corporation nor any person claiming under it may maintain a suit in any court of this State [Maryland] unless it shows to the satisfaction of the court that: (1) The foreign corporation or the person claiming under it has paid the penalty specified in § 7-302 of this subtitle..."

33. Plaintiff/Creditor waited for 30 days for Landscape to register in Maryland as a foreign corporation which it did not do. Therefore, on September 17, 2017, Plaintiff/Creditor

filed suit against Defendant/Debtor, personally, in the Circuit Court for Carroll County, Maryland, the SCA.

34. Defendant/Debtor did not file for sanctions or attorney fees in the SCA as Attorney Alam had threatened. In fact, on January 10, 2018, he chose not to file a motion to dismiss invoking any privileges as a corporate entity, such as a corporate veil to shield him from the SCA, instead, he answered the SCA Complaint, PERSONALLY, and filed a Counter-Complaint against Plaintiff/Creditor, PERSONALLY, demanding $83,755.00 in damages plus travel expenses. *Complaint* at ¶ 31 and a copy of the Counter-Complaint at Exhibit 11.

35. As Discovery proceeded during the SCA, it was revealed to Plaintiff/Creditor for the first time that BrightView had paid Defendant/Debtor in full by May of 2017, making no deductions for damages to the Work Sites. Also, that BrightView had advised Defendant/Debtor on or before June 19, 2017, that it had inspected all of the Work Sites and found no damages to the Work Sites that could be attributed to snow removal activity conducted during the previous winter season and that Walmart concurred that no damages to the Work Sites could be attributed to the most recent snow removal activity.

36. Defendant/Debtor, personally, filed a Chapter 7 Bankruptcy in this Court on August 15, 2019.

37. On October 15, 2019, Defendant/Debtor, personally, filed his unsuccessful Complaint against Plaintiff/Creditor accusing Plaintiff/Creditor of violating the automatic stay. In his **Notice of Motion**, dated October 15, 2019, Defendant/Debtor specifically stated that Myers Lawn Care Services, Inc. was a Creditor of his.

38. In his **Affirmation In Support Of Debtor's Motion For An Order Finding Myer's Lawn Care Services, Inc. ... In Willful Violation of the Automatic Stay....**, also dated October 15, 2019, Defendant/Debtor identified Plaintiff/Creditor as "...the **creditor, Myer's Lawn Care Services, Inc..**". On page 2, Defendant/Debtor identified Myer's Lawn Care Services, Inc. as a **"pre-petition creditor"** and Myer's Lawn Care Services, Inc. as a **creditor** on the mailing matrix (emphasis added).

39. The late fees have continued to accrue at $38.97 per diem, since April 1, 2017, due under the terms of the aforementioned Subcontracts. As of the date of this pleading, Plaintiff/Credit Myer's has incurred a loss of $103,080.65 as a result of the breach by Defendant/Debtor Fragala of the Subcontracts which includes the $58,460.00 for the services provided and not paid for, plus $44,620.65 in late fees (1,145 days times $38.97).

40. As of September 11, 2017, and all times thereafter, Defendant/Debtor Fragala has refused to pay, and has not paid, the unpaid balance of $58,460.00, plus late fees of $44,620.65 which continue to accrue at $38.97 per diem due under the terms of the aforementioned Subcontracts, thereby materially breaching its Subcontracts with Plaintiff/Creditor Myer's.

41. Plaintiff/Creditor Myer's has incurred a loss to date of $103,080.65 as a result of the breach by Defendant/Debtor Fragala of the Subcontracts.

42. Additional facts will be disclosed below as needed.

### Pertinent Legal Standards

43. Plaintiff/Creditor incorporates herein those **Pertinent Legal Standards** stated in its' Complaint for Nondischargability of Plaintiff's Claim, Memorandum of Law in Opposition to Defendant Russell Fragala's Motion to Dismiss Plaintiff's Complaint and its Plaintiff's

Supplement to Memorandum of Law in Opposition to Defendant Russell Fragala's Motion to Dismiss Plaintiff's Complaint.

### Defendant/Debtor's Assertion That He Is Shielded
### By A Corporate Veil Is Without Merit.

44. In his **Defendant Russell Fragala's Memorandum of Law in Support of his Motion to Dismiss the Plaintiff's Complaint,** Defendant/Debtor alleges, among other things, that he is not personally a Debtor of Plaintiff/Creditor because Plaintiff/Creditor contracted with the Defendant/Debtor's business, Landscape, therefore, supposedly, Defendant/Debtor is shielded from personal liability by the corporate veil Landscape provides. However, Defendant/Debtor's position is without merit.

45. Defendant/Debtor cannot have it both ways.

46. He chose to answer the complaint brought against him by Plaintiff/Creditor, in the SCA, personally, instead of filing a motion to dismiss based on a corporate veil defense allegedly provided by Landscape, because it was more convenient for him to do rather than complying with MD Code, Corporations and Associations, § 7-302 and admitting he was guilty of committing possibly 22 criminal misdemeanors and paying up to $22,000.00 in fines.

47. He chose to sue, and is still suing, Plaintiff/Creditor personally, in the SCA, instead of as Landscape, because it is more convenient for him to do so, rather than comply with MD Code, Corporations and Associations, § 7-301, Noncomplying Corporation, Maintenance of Suit, which would prohibit him from suing as Landscape unless he admitted that he was guilty of possibly 22 criminal misdemeanors and pay up to $22,000.00 in fines. If his SCA suit is successful, he will, personally, be awarded the judgment.

48. In the present Bankruptcy case he chose to personally sue Plaintiff/Creditor for alleged stay violations. He named Plaintiff/Creditor as a Creditor of Defendant/Debtor numerous times.

49. The undisputable facts are that, when it was convenient for him to do so, Defendant/Debtor: chose to answer the complaint in the SCA personally instead of filing a motion to dismiss under a corporate veil theory; is personally suing Plaintiff/Creditor in the SCA for allegedly breaching the very same Subcontracts he now claims belong to Landscape; and personally sued Plaintiff/Creditor in his Bankruptcy case, naming Plaintiff/Creditor as a Creditor of Defendant/Debtor numerous times.

50. The facts that are presently before this Court establish that Defendant/Debtor invokes an alleged corporate veil, as he does now, when it's convenient for him to do so and ignores a corporate status when it serves his purpose. Therefore, Plaintiff/Creditor respectfully submits that, based on the facts discussed above, Defendant/Debtor does not have a corporate veil to shield him.

51. Plaintiff/Creditor Myer's has incurred a loss to date of $103,080.65 as a result of the breach by Defendant/Debtor Fragala of the Subcontracts.

### Defendant/Debtor's Conduct Described Above Constitutes False Representations, False Pretenses and Actual Fraud Thereby Meets the Elements of § 523(a)(2)(A) to Except the Debt From Discharge

52. Plaintiff incorporates paragraphs No. 1 through No. 51 of this Second Amended Complaint fully as if the allegations were repeated at length herein.

53. Given the facts recited above and in the Complaint, Plaintiff/Creditor meets the elements required under § 523 (a) (2)(A) and (6) to except the dischargablity of a debt based false pretenses, false representations, and actual fraud. Further, Defendant/Debtor's fraudulent

conduct was Willful and Malicious to Plaintiff/Creditor which has caused, and still is causing via

the lawsuit Defendant/Debtor has filed against Plaintiff/Debtor in the SCA, significant damage to

the Plaintiff/Creditor.

54. 11 U.S. Code § 523 (a) (2) (A) Exceptions to discharge, holds:

(a) A discharge under section 727, 1141, 1192 [1] 1228(a), 1228(b), or 1328(b) of this title does
not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent
obtained by—

(A)
false pretenses, a false representation, or actual fraud, other than a statement respecting the
debtor's or an insider's financial condition;

55. In *Chase Bank, U.S.A., N.A. v. Vanarthos (In re Vanarthos)*, 440 B.R. 67, 73 (Bankr.

S.D.N.Y 2010) the court stated that in order to succeed on a cause of action under section

523(a)(2)(A), a creditor must establish the following elements:

(i) The debtor made a false representation;
(ii) At the time the representation was made, the debtor knew it was false;
(iii) The debtor made the representation with the intention of deceiving the creditor;
(iv) The creditor justifiably relied on the representation; and
(v) The creditor sustained loss or damage as the proximate consequence of the false, material
misrepresentation.

56. Conscious deception and concealment of material information may constitute false
pretenses under § 523(a)(2)(A). *Forraj v. Soliz (In re Soliz)*, 201 B.R. 363, 369
(Bankr.S.D.N.Y.1996); *Sandak v. Dobrayel (In re Dobrayel)*, 287 B.R. 3, 17
(Bankr.S.D N.Y.2002); *Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 396
(Bankr.E.D.N.Y.2005). "As distinguished from false representation, which is an express
misrepresentation[,] false pretense involves an implied misrepresentation or conduct intended to
create and foster a false impression." *In re Weinstein*, 31 B.R. 804, 809 (Bankr.E.D.N.Y. 1983).
"'[O]missions or a failure to disclose on the part of the debtor can constitute misrepresentations
for purposes of nondischargeability where circumstances of the case are such that omissions or
failure to disclose create a false impression which is known by the debtor.'" *Soliz*, 201 B.R. at
369 (quoting *Peterson v. Bozzano (In re Bozzano)*, 173 B.R. 990, 993 (Bankr. M.D.N.C.1994);
*Grad v. Behman (In re Behnam)*, 2005 Bankr.LEXIS 435, *20 (Bankr.E.D.N.Y 2005)) (Silence
may constitute false pretenses when there is a duty to disclose).

57. The facts Plaintiff/Creditor recites above and in the Complaint establish that the Subcontracts that the parties entered into contained, among other things, a false representation whereby Plaintiff/Creditor would only be liable for damages its snow removal activities would cause referred to above as the Liability Clause. *Complaint* at Exhibit 1.

58. Plaintiff/Creditor reasonably relied on the Liability Clause when it entered into the contracts. In fact, from November 2016 thru March 3, 2017, Defendant/Debtor paid Plaintiff/Creditor for all of the snow removal services it had provided. *Complaint* at Exhibit 3.

59. The Liability Clause regarding Plaintiff/Creditor's liability for damages it may have caused was not invoked nor was the late fee clause that Defendant/Debtor agreed to pay on balances owing if invoices submitted were not paid within 25 days of submission. *Id.* ¶ 10.

60. Snow removal activity resumed to address a storm that occurred on or about March 3, 2017. Plaintiff/Creditor decided to continue to perform the snow removal activities reasonably relying on the Liability Clause, which would only make it liable for damages it would cause and not be charged for damages it did not cause, and the late fee clause which promised it would be paid in a timely way. However, the facts revealed that the Liability Clause and the late fee clause, which Plaintiff/Creditor reasonably relied on to resume snow removal activity, were misrepresentations.

61. Plaintiff/Creditor submitted invoices to Defendant/Debtor totaling $183,460.00 resulting from the snow removal activity caused by the March 3, 2017 storm but was only paid $75,000.00 on April 17, 2017 and $50,000.00 on May 17, 2017, leaving an unpaid balance of $58,460.00. *Complaint* Exhibit 3. And that was after Defendant/Debtor had been paid in full by BrightView, on May 10, 2017, with no damages deducted. *Complaint* ¶ 42.

62. Based on the facts recited, it is not only plausible, but beyond all reasonable contestation, that Defendant/Debtor, knowingly, made false representations, via the Liability Clause, that Plaintiff/Creditor would only be responsible for damages it caused to the Work Sites, as well as the late fee amendment that ensured timely payments of Plaintiff/Creditor's invoices. These false representations induced Plaintiff/Creditor to enter into the 22 Subcontracts and were followed by Defendant/Debtor until March 3, 2017 when all of Plaintiff/Creditor's invoices had been fully paid, in a timely manner, with no deductions made for damages.

63. However, it was revealed that the Liability Clause and the late fee amendment were false representations that induced Plaintiff/Creditor to resume snow removal services after the March 3, 2017 snow storm when Defendant/Debtor falsely charged Plaintiff/Creditor $58,460.00 for damages to the Work Sites when he knew Plaintiff/Creditor had not caused because BrightView had advised him that no damages had been caused.

64. The Liability Clause was revealed to be a false representation when Defendant/Debtor's employee, Mr. Hornstein, via his email dated June 6, 2017, accused Plaintiff/Creditor of causing damages to the Work Sites he knew Plaintiff/Creditor did not cause. And when Defendant/Debtor's attorney, Attorney Alam, via her letter dated August 11, 2017, accused Plaintiff/Creditor of causing damages to the Work Sites months after Defendant/Debtor had been advised by BrightView that no damages had been caused by the snow removal activity of the previous winter season. And the lawsuit Defendant/Debtor personally filed, on January 10, 2018, against Defendant/Debtor demanding $83,755.00 plus travel expenses as compensation for the alleged damages Defendant/Debtor knows Plaintiff/Creditor did not cause.

65. These false representations were made by Defendant/Debtor for the purpose of deceiving Plaintiff/Creditor into accepting an unjustified reduction of the monies it was owed for

the snow removal services it had provided under the knowingly false contention that
Plaintiff/Creditor had caused damages to the Work Sites, which it had not caused, which was,
and still is, a violation of the misrepresented Liability Clause and late fee clause.

66. As a direct consequence of Defendant/Debtor's false representations, i.e. the
Liability Clause, the late fee clause and the false claims Plaintiff/Creditor caused damages to the
Work Sites, Plaintiff/Creditor has lost and continues to lose money due it under the contractual
terms, of $103,080.65 as of this date and attorney fees and expenses to pursue this claim, the
SCA lawsuit against Defendant/Debtor and to defend the SCA lawsuit Defendant/Debtor has
falsely brought against Plaintiff/Creditor.

67. One of the assertions Defendant/Debtor incorrectly states is that the debt arises from
a contract claim therefore, allegedly, a fraud claim cannot arise from a contract claim. However,
under Maryland law, tort claims can arise from contract claims.

> There may have been some time in the pristine past when contracts were contracts and
> torts were torts and the lines of demarcation between them were clear. For good or ill,
> that is not the case now. It has long been recognized, for example, that defective
> performance of a contractual undertaking may give rise to an action in both tort and
> contract. See, in general, Prosser and Keeton, The Law of Torts, 5th ed., pp. 660-67
> (1984). The Court of Appeals seemed to recognize in St. Paul at Chase v. Mfrs. Life
> Insur., 262 Md. 192, 278 A.2d 12, cert. denied 404 U.S. 857, 92 S.Ct. 104, 30 L.Ed.2d 98
> (1971), and H & R Block, Inc. v. Testerman, 275 Md. 36, 48, 338 A.2d 48 (1975), that an
> action in tort may lie for "negligent breach of contract." See also Restatement (Second) of
> Torts, § 323 (1966), predicating tort liability on the negligent performance of an
> undertaking to provide certain services. Note, in particular, comment d to § 323.
> *Bocchini v. Gorn Management Co., et al.*, 69 Md. App. 1, 16; 515 A. 2d 1179 (1986).

68. "That is not to say, of course, that an action for deceit can never arise out of an
existing contractual relationship. Where a dispute occurs with respect to a term or condition or
the nature or adequacy of the performance required and one party knowingly makes a false
statement of his intention to perform, intending thereby to induce the other to take or refrain

from taking some action that he has a right to take or not to take under the circumstances, we see no reason why such a false statement cannot serve as the basis of an action for deceit, if the other requisite elements of the tort are present." *Id.,* 69 Md. App. 1, 21; 515 A. 2d 1189-90.

69. "…the existing intention of a party at the time of contracting is a matter of fact and fraud may be predicated on promises made with a present intention not to perform them…" *Parker v. Columbia Bank,* 91 Md. App. 346, 360-61, 604 A.2d 521, 528 (Md. App. 1991) quoting Levin v. Singer, 227 Md. 47, at 63-64, 175 A.2d 423 at 431-432 (1961). See also Howard v. Riggs Nat'l Bank, 432 A.2d 701, 706 (D.C.1981) Tufts v. Poore, 219 Md. 1, 147 A.2d 717 (1959); *Bocchini v. Gorn Management Co.,* 69 Md.App. 1, 21, 515 A.2d 1179, 1189-1190 (1986).

70. The aforementioned reasons more than meets the Plausible Standard that the subject debt is excepted from discharge pursuant to § 523(a)(2) (A).

**Defendant/Debtor's Conduct Described Above Caused Willful and Malicious Injury to Plaintiff/Creditor Therefore Plaintiff/Creditor's Claim is Nondischargable Pursuant to §523(a)(6)**

71. Plaintiff/Creditor incorporates paragraphs No. 1 through No. 70 of this Second Amended Complaint fully as if the allegations were repeated at length herein.

72. Under § 523(a)(6), a debt for "willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable. *11 U.S.C. § 523(a)(6).* "The terms 'willful' and 'malicious' are separate elements, and both elements must be satisfied" by a preponderance of the evidence. *Rupert v. Krautheimer (In re Krautheimer),* 241 B.R. 330, 340 (Bankr.S.D.N.Y.1999). "[I]n applying the standard, courts properly should look to tort law to distinguish the 'willful and malicious' from the merely 'reckless' act." *Wright v. Bujnowski (In re*

*Wright*, 209 B.R. 276, 280 (E.D.N.Y. 1997). *Rescuecom Corp. v. Khafaga (In re Khafaga)*, 419 B.R. 539, at 548–49 (Bankr. E.D.N.Y 2009).

73. The Supreme Court has held that "'[w]illful' modifies the word 'injury', indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (emphasis in original). Debts arising from negligent or reckless conduct are not within the ambit of § 523(a)(6). *Id.*

74. While *Geiger* clarified the "willful" prong by removing negligent or reckless conduct from the scope of § 523(a)(6), the requisite state of mind necessary to satisfy the "willful" element was not defined. *Stahl v. Gross (In re Gross)*, 288 B.R. 655, 662 (Bankr.E.D.N.Y.2003); *Chaffee v. Chaffee (In re Chaffee)*, 2009 WL 2872834, *6, 2009 Bankr.LEXIS 2644, *17 (Bankr.N.D.N.Y. 2009). *Khafaga* at 549.

75. While some courts maintain that specific intent to injure is not necessary under *Geiger* to satisfy the willfulness prong, *Gross*, 288 B.R. at 662 (holding that "[a]n intentional wrongful act that necessarily causes injury meets the willfulness standard under *Geiger*") (citation omitted);

*Yash Raj Films (USA) v. Ahmed (In re Ahmed)*, 359 B.R. 34, 41 (Bankr.E.D.N.Y. 2005) (finding debtor's continuous knowing violation of the Copyright Act constitutes willfulness under § 523(a)(6) "because the debtor knew that the injury was unavoidable or substantially certain to occur because of his conduct"); *Prairie Eye Ctr. v. Butler (In re Butler)*, 297 B.R. 741, 747 (Bankr.C.D.Ill.2003) (holding injury willful where debtor had specific intent to injure but court noted that it was sufficient that debtor repeatedly and knowingly violated covenant not to

compete with knowledge that injury was substantially certain to occur), other courts have held that specific intent to cause injury is required under *Geiger. Sanger v. Busch (In re Busch)*, 311 B.R. 657, 669 (Bankr.N.D.N.Y.2004) (noting and rejecting the minority view that a substantial certainty of harm can satisfy § 523(a)(6) willfulness element); *Neshewat v. Salem (In re Salem)*, 290 B.R. 479, 485-486 (S.D.N.Y.2003) (affirming nondischargeability determination under § 523(a)(6), where debtor did not merely commit an intentional act that was certain to cause injury, but deliberately intended to cause the injury). *Khafaga* at 549-50.

76. As the summary of facts discussed above and those in the Complaint clearly establish well beyond the plausible standard, Defendant/Debtor deliberately, intentionally and *Willfully* injured Plaintiff/Creditor when he withheld the funds due Plaintiff/Creditor under the subject Subcontracts under the knowingly false representation that Plaintiff/Creditor had damaged the Work Sites. Then he went beyond breaching the Subcontracts and sued Plaintiff/Creditor in the SCA for allegedly damaging the Work Sites when he knew Plaintiff/Creditor had not damaged the Work Sites. He knew that because BrightView had told him the Work Sites had not been injured by the snow removal activities of the previous winter and BrightView had paid Defendant/Debtor $551,204.99 for the snow removal services that Plaintiff/Creditor had provided which was the full contract price owed and that no deductions were made for damages.

### Maliciousness

77. "Malicious", as defined by the Second Circuit, can involve actual or constructive malice, and "means wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Financial Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 88 (2d Cir. 1996). The conduct giving rise to certain causes of action may be inherently malicious, such

as malicious prosecution or assault. *Novartis Corp. v. Luppino (In re Luppino)*, 221 B.R. 693, 700 (Bankr. S.D.N.Y.1998).

78. In other cases, malice may be easily deduced where "the debtor's conduct giving rise to liability has no potential for economic gain or other benefit to the debtor, from which one could only conclude that the debtor's motivation must have been to inflict harm upon the creditor." *Id.* However, in cases where a debtor seeks profit or some other benefit, "the underlying conduct, however deplorable, would not give rise to liability under § 523(a)(6) in the absence of some additional, aggravating conduct on the part of the debtor of sufficient gravity to warrant an inference of actual malice under the Second Circuit decision in [*Stelluti*]." *Id.* "Under the law in this Circuit, the element of malice may be found ... upon a finding of aggravated, socially reprehensible conduct sufficient to justify an imputation of malice to the debtor." *Bundy Am. Corp. v. Blankfort (In re Blankfort)*, 217 B.R. 138, 146 (Bankr. S.D.N.Y.1998) Accordingly, a knowing breach of contract generally does not satisfy the malicious element of § 523(a)(6) absent "some aggravating circumstance evidencing conduct so reprehensible as to warrant denial of the 'fresh start' to which the 'honest but unfortunate' debtor would normally be entitled under the Bankruptcy Code." *Luppino*, 221 B.R. at 700; *Blankfort*, 217 B.R. at 144 (malicious prong will be satisfied where debtor willfully breached a contractual duty "in circumstances where it is evident that the conduct will cause injury to the plaintiff and, most important ... under some aggravating circumstance to warrant the denial of discharge"); *Alessi v. Alessi (In re Alessi)*, 405 B.R. 65, 67-68 (Bankr.W.D.N.Y.2009); *Hambley*, 329 B.R. at 402; *Traditional Indus. v. Ketaner (In re Ketaner)*, 149 B.R. 395, 396 (Bankr. E.D.Va.1992) (intentional breach of non-compete clause may constitute willful and malicious injury). *Khafaga, supra*, at 550.

79. Whether circumstances are sufficiently aggravating to support a finding of malice is a fact-specific determination made on a case-by-case basis. *See Stelluti*, 94 F.3d at 88 (malice may be implied "by the acts and conduct of the debtor in the context of [the] surrounding circumstances") (internal quotations and citation omitted). "A court should look to the totality of the circumstances to determine malice." *Forrest v. Bressler (In re Bressler)*, 387 B.R. 446, 455 (Bankr. S.D.N.Y.2008).

### Defendant/Debtor's Behavior Constituted Malicious, Aggravated and Socially Reprehensible Conduct

80. Defendant/Debtor's behavior constituted the malicious, aggravated and socially reprehensible conduct required to except the subject debt from discharge Pursuant to § 523(a)(6). In October 2016, BrightView conducted a comprehensive inspection of all of the Work Sites to document its conditions before the snow season began. On or before June 16, 2017, BrightView conducted another inspection of all of the Work Sites to determine if any damages were caused to the Work Sites by the most recent snow removal activities and concluded that no damages had been caused. Walmart concurred with that conclusion.

82. By May 10, 2017, BrightView paid Defendant/Debtor for the snow removal services that Plaintiff/Creditor had provided which was the full contract price owed and that no deductions were made for damages. On or before June 19, 2017, BrightView advised Defendant/Debtor's employee, Mr. Hornstein, that no damage had occurred. However, on June 10, 2017 Mr. Hornstein advised Plaintiff/Creditor, falsely, that he had inspected the Work Sites and discovered that the Plaintiff/Creditor's snow removal activity had caused substantial damage to many of the Work Sites and that Plaintiff/Creditor would not be paid the balance owed it, $58,460.00, unless it repairs the alleged damages, however Plaintiff/Creditor never received a list of the alleged damages.

83. It is undisputed that Defendant/Debtor concealed from Plaintiff/Creditor that BrightView had advised him that no damage had been caused and that BrightView had paid him in full with no deductions for damages. Instead, Defendant/Debtor had his attorney send the undersigned the August 11 Letter which falsely claimed Plaintiff/Creditor had caused so much damage to the Work Sites that Defendant/Debtor was repairing the Work Sites and the cost to do so will exceed the amount owed Plaintiff/Creditor to the point Plaintiff/Creditor will OWE Defendant/Debtor. The August 11 Letter Defendant/Debtor had his attorney send constituted the federal crime of Mail Fraud, which is a felony.

84. Finally, Defendant/Debtor went way beyond breaching the Subcontract, in what may be the most aggravated, socially reprehensible conduct of all, on January 10, 2018, Defendant/Debtor, personally, filed a law suit, in the SCA, against Plaintiff/Creditor demanding $83,755.00 plus travel expenses as compensation for the repair of alleged damages Defendant/Debtor personally knew Plaintiff/Creditor did not cause. Said lawsuit constituted malice under the intentional tort of Malicious Use Of Civil Process.

85. Under Maryland law, a person acts with malice if the person begins or continues a civil proceeding with a purpose different from the proceeding's intended purpose. If a civil proceeding was started without probable cause, the existence of malice is inferred. See MPJI-Cv 17:13.

86. Defendant/Debtor's conduct described above was *Willful*, because it was deliberate, intentional and done with certainty to cause damage to Plaintiff/Creditor. See *Geiger, supra.* Also, the Defendant/Debtor's conduct was *Malicious*, for purposes of § 523(a)(6), because it was: done with malice; socially reprehensible with aggravating circumstances; and "wrongful

and without just cause or excuse". *Stellan, supra.* Finally, Defendant/Debtor's conduct caused willful and malicious injury to Plaintiff/Creditor and its property.

**WHEREFORE,** Based on the aforementioned facts and law Plaintiff/Creditor Myer's respectfully requests judgment for the following:

**Finding;** that Defendant/Debtor is not shielded by a corporate veil;

Plaintiff/Creditor's Claim is not dischargeable pursuant to § 523(a)(2) (A);

Plaintiff/Creditor's Claim is not dischargeable pursuant to § 523(a)(6); and

**Ordered** that Plaintiff/Creditor's Claim is nondischargable.

Dated; May 26, 2020

Respectfully submitted,

William M. Burke
2807 Bel Court
Manchester, Maryland 21102
(410)-239-1500
*Attorney for Creditor Myer's Lawn Care Services Inc.*