UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

                                                                 Case No. 8-19-75714-reg

Russell Fragala
aka Russell L. Fragala,

                                                                 Chapter 7

                        Debtor.
-----------------------------------------------------------------x
Myer's Lawn Care Services, Inc.,

                        Plaintiff,       Adv. No. 19-08150-reg

     - against -

Russell Fragala,

                        Defendant.
-----------------------------------------------------------------x

## **DECISION AFTER TRIAL**

       Before the Court is an adversary proceeding commenced by Myer's Lawn Care Services, Inc. ("Myer's" or "Plaintiff") against the debtor, Russell Fragala ("Fragala" or the "Debtor") seeking: (1) to hold the Debtor individually liable on a fraud theory, and also to pierce the corporate veil and hold the Debtor liable for the alleged obligations of his company, Russ Fragala Landscape Corporation ("Landscape") to Myer's; and (2) a finding that Myer's has an allowed claim in this case in the amount of $92,366.80 and that such claim is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6). Fragala argues that Myer's is not a creditor in the instant bankruptcy, but even if the Court determines Myer's has an allowed claim that claim is dischargeable.

       For the reasons that follow, the Court finds that as of this writing Myer's has an allowed claim in this case in the amount of $93,366.80 by virtue of the uncontested proof of claim filed by Myer's against the Debtor. *See* 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). However,

regardless of the basis for the finding that Myer's has an allowed claim Myer's has failed to prove that such claim is non-dischargeable under either § 523(a)(2)(A) or (a)(6).

This case highlights the distinction between establishing an allowed claim and seeking a finding that such claim is non-dischargeable. Courts have been very clear that claims generally should be dischargeable in bankruptcy. That is the basis for our bankruptcy laws—providing an honest debtor with a fresh start. Only where the facts establish that a debtor's actions violate very specific sections of the Bankruptcy Code will a debt be excepted from discharge. *See* 11 U.S.C. § 523(a). What was proven in this case is that Myer's has a claim and is entitled to receive a distribution from the estate. What was not proven is that the conduct of the Debtor satisfies the statutory basis to find the claim non-dischargeable. Judgment will enter in favor of the Debtor.

## FACTS AND PROCEDURAL HISTORY

The Debtor owned and operated Russ Fragala Landscape Corporation, a New York corporation, from 2014 through early 2018. Plaintiff, Myer's Lawn Care Services, Inc., is a Maryland corporation. At some point in 2016, Landscape contracted with BrightView Solutions LLC ("BrightView"), as agent for Walmart, Sam's Club and Burlington, to provide snow removal services during the 2016/2017 winter snow season for twenty-two (22) Walmart and Sam's Club stores and a Burlington store (each a "Work Site" and together the "Work Sites") located in Maryland on a fixed-fee basis. Ex. 1.[1] That is, Landscape would be paid a fixed amount under the contract independent of how much or how often it snowed. Fragala Depo., Sept. 2, 2021, Ex. 3 at 37–38. On November 3, 2016, Landscape and Myer's entered into twenty-two (22) subcontracts under which Myer's would provide snow removal services for each Work

---

[1] In this Decision, Plaintiff's exhibits are numeric. Defendant's exhibits are alphabetic.

Site. *E.g.*, Ex. 2. Payment under the subcontracts was on a per occurrence basis; the amount due under the subcontract depended on the occurrence of a snow event, the amount of snow, and equipment and material used following each snow occurrence. *Id.;* Myer Depo., Aug. 31, 2021, Ex. B at 73–76.

Each subcontract contained the name and address of each Work Site, a breakdown of pricing, and a "Statement of Subcontract Work." Ex. 2. Under the Statement of Subcontract Work, Myer's was to document all pre-existing damage present at each Work Site prior to the first snowfall of the season on a pre-season inspection form with notes and photos ("pre-season inspections"). Ex. 2. Myer's agreed to indemnify and hold Landscape harmless "against all liability for claims and liens for labor performed or materials used or furnished to be used on the job . . . ." *Id.* Additionally, the subcontracts contained a "Repair of Damage" provision pursuant to which Myer's would be held liable for post-season damages attributable to its snow removal activities. *See* Ex. 2.

It is undisputed that Myer's did not provide a report of pre-season damages at the Work Sites to Landscape prior to the first snowfall. However, in October 2016, BrightView, through several of its employees, conducted pre-season inspections and documented the condition of the Work Sites prior to the snow season, which included varying degrees of damage at nearly all Work Sites. Ex. 9–12. Fragala testified that Landscape's employee, Mark Hornstein, joined the pre-season inspections but he did not provide a pre-season inspection report to Landscape. Tr. 71–73, May 2, 2022.

Between November 3, 2016 and February 9, 2017, Myer's performed under the subcontracts. *Id.* at 115–16. As of February 9, 2017, Landscape had paid Myer's in full under the subcontracts. *Id.* at 118; Ex. 15. In March 2017, there was a significant snow event which

impacted the Work Sites. As a result, Myer's resumed snow removal activities at the Work Sites and invoiced Landscape $183,460.00 for services performed. *See* Myer Depo., Aug. 31, 2021, Ex. B at 38, 51; Ex. 15. Landscape paid Myer's $127,070.00, leaving an unpaid balance of $58,460.00. Ex. 15. Fragala asserts that the reason Myer's was not paid in full was that there were post-season damages requiring repair. Tr. 135, 138, May 3, 2022.

In June 2017, BrightView conducted post-season inspections of the Work Sites and reported no damages with the exception of damage to a cart corral and some curbs. Exs. 9–12, 32. This was also supported by a letter from BrightView's counsel, dated May 24, 2018, stating that BrightView had not received any communication from Landscape, Walmart, Sam's Club or Burlington stores about damage caused by snow removal services in the 2016/2017 snow season. Ex. 9.

Despite this documentary evidence to the contrary, Fragala testified in a deposition and at trial that BrightView contacted Landscape about post-season damages to the Work Sites. Tr. 121–22, May 2, 2022; Tr. 142, May 3, 2022. As a result, according to Fragala, BrightView withheld $160,000.00 under their contract until the damages were repaired and Landscape provided to BrightView "job sheets" signed by each store showing the repairs completed. Tr. 110–12, May 2, 2022; *see also* Fragala Depo., Sept. 2, 2021, Ex. 3 at 53, 61–64.

On June 6, 2017, Hornstein, on behalf of Landscape, emailed Myer's stating that Hornstein had conducted Work Site inspections and discovered damage caused by Plaintiff's snow removal services. Hornstein stated that he would forward a list of the repairs to be completed by Myer's before June 23, 2017. Ex. 16. Hornstein never sent the list. Hornstein Depo., Oct. 6, 2021, Ex. 5 at 134. Myer's disputed that it caused the alleged damage and did not conduct any repairs.

4

Fragala testified that Landscape sent employees to Maryland to repair the alleged damage in late July and August 2017. Tr. 112, May 2, 2022; Tr. 40–41, May 3, 2022. Fragala produced twenty (20) "Landscaping Job Sheets" stamped and signed by each store reflecting the damage repaired at each Work Site. Ex. 21. Each Landscaping Job Sheet is dated between August 1, 2017 and August 5, 2017, with the exception of one which is dated August 31, 2017. Landscape also prepared corresponding invoices to Myer's reflecting the repairs completed and the cost of repairs for each Work Site. *Id.* Every invoice is dated August 29, 2017. A spreadsheet apparently created by Landscape summarized the invoices and the travel, lodging, and meal expenses associated with the repairs.[2] Ex. 26. However, Fragala could not produce receipts or invoices for materials purchased to repair the damages, receipts for fuel to travel from Long Island to Maryland, or food or lodging receipts. Tr. 88–90, 93–95, May 3, 2022. According to Fragala, these documents were destroyed by a disgruntled employee. Tr. 125–26, May 2, 2022. Fragala testified that it was not until 2018, once the repairs were completed, that BrightView paid Landscape in full for the contracted-for snow removal services.[3] Tr. 110–12, May 2, 2022; *see* Ex. 8.

On August 11, 2017, Landscape's attorney, Rompel Alam, sent a letter to Plaintiff's counsel advising that Myer's was in substantial breach of the subcontract with Landscape because Myer's had not repaired the damage caused to the Work Sites. Ex. 17. As a result of

---

[2]     There are some discrepancies between the invoices and the spreadsheet. Four entries on the spreadsheet do not match the cost of the repairs on the invoices: 2248 Cantonsville, 2290 Owings Mills, 6239 Timonium, and 6651 Cantonsville. Ex. 26. Three Work Sites are attributed to Walmart stores on the spreadsheet (Ex. 26) but to Sam's Club stores on the Landscaping Job Sheets (Ex. 21). One entry on the spreadsheet, 2577 Cockeysville, does not have a corresponding invoice and/or Landscaping Job Sheet. Ex. 26.

[3]     In the amended complaint, Myer's alleges that Landscape was paid by BrightView on May 10, 2017. Fragala testified at trial that Landscape was paid by BrightView in 2018. Neither party provides evidence to support their contention.

Plaintiff's refusal to take responsibility for the damage, the letter explains that Landscape began making repairs to the Work Sites in July 2017. *Id.* Plaintiff's attorney responded by letter on August 17, 2017, denying the allegations that Myer's caused the damage and reasserting that Landscape owed Myer's $58,460.00 plus late fees of $11,119.01 and accruing by $38.97 per day pursuant to the "Addendum to 2016-2017 Snow Removal Contract." Ex. 18.

On September 17, 2017, Myer's sued both Fragala individually and Fragala doing business as Russ Fragala Landscape Corporation, in Maryland state court alleging that defendants breached the subcontracts and demanding judgment against both defendants in the amount of $70,592.23. Ex. 22. According to Plaintiff's counsel, he sued Fragala individually and sued Landscape as a "dba" because under Maryland law he believed that a New York corporation that was not registered to do business in Maryland could not be sued in Maryland state courts. *See* Ex. 18. Fragala answered the state court complaint in his individual capacity on January 10, 2018 (Ex. 24) and filed a counterclaim, also in his individual capacity, against Myer's for $83,755.00 in damages related to the alleged costs to repair the damaged Work Sites, Ex. 25.[4]

Fragala filed this chapter 7 bankruptcy petition on August 15, 2019 which ultimately stayed the Maryland litigation.[5] Myer's filed Proof of Claim 1-1 in the amount of $92,366.80. This amount includes the unpaid balance of $58,460.00 and late charges of $33,906.80 as of

---

[4]     Fragala did not schedule this counterclaim as an asset in this bankruptcy case.

[5]     Landscape filed a chapter 7 bankruptcy case the following year on November 4, 2020. *In re Russ Fragala Landscape Corp.*, Case No. 20-73335. Myer's also filed a Proof of Claim in that case claiming $109,904.80 for services performed which included the unpaid balance of $58,460.00 plus late charges of $51,444.80 as of November 4, 2020. Case No. 20-73335, Proof of Claim 2-1. The Court notes that both Fragala's and Landscape's bankruptcy cases are "asset" cases and there may be distributions to creditors in both cases. To be clear, the Court anticipates that, to the extent there are distributions made either in Fragala's bankruptcy case or Landscape's, Myer's should not be paid more than it is owed.

August 3, 2019. Proof of Claim 1-1. Myer's commenced this adversary proceeding seeking a determination that Fragala's obligation to Myer's, assuming such an obligation exists, is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6). ECF No. 1.[6] Myer's filed an amended complaint adding a claim to pierce the corporate veil in addition to the § 523(a) claims. ECF No. 15. Fragala filed a motion to dismiss the amended complaint. ECF No. 18. The motion to dismiss was denied. ECF No. 25. Fragala filed an answer to the amended complaint. ECF No. 26. Myer's filed motions for summary judgment (ECF Nos. 27, 28, 70) which were denied.

A trial in this matter was held on May 2 and 3, 2022, at which time the Debtor testified. The Court admitted all exhibits into evidence with the exception of Plaintiff's exhibit 19. Plaintiff's exhibits 27, 28, 29, and 30 were later withdrawn by letter. ECF No. 121.

On August 30, 2022, the Debtor's counsel filed an emergency motion to be relieved as counsel due to the Debtor's failure to pay agreed-upon fees ("Motion to Withdraw"). ECF No. 142. A hearing on the Motion to Withdraw was scheduled for September 12, 2022.

The parties filed post-trial briefs on September 2, 2022. ECF Nos. 147, 148.

On September 6, 2022, Plaintiff's counsel docketed a letter (ECF No. 151) requesting that the Court admit two additional documents into evidence as exhibits 37 and 38, respectively: (1) a post-trial affidavit of Plaintiff's principal, Robbie Myer, who was not permitted to testify at trial;[7] and (2) a stipulation of settlement entered into among the chapter 7 trustee in Landscape's bankruptcy case (the "Landscape Trustee"), Case No. 20-73335, Russ Fragala Construction Corp. ("RFCC") and Russell M. Fragala, the Debtor's son, pursuant to which RFCC and Russell

---

[6] Unless otherwise noted, all ECF references in this Decision are to the Adv. Proc. No. 19-8150.

[7] The Court excluded Myer from the courtroom due to his failure to comply with the Court's COVID vaccination requirements, which requirements were made clear to the parties well in advance of the trial date. Tr. 3-8, May 2, 2022.

7

M. Fragala agreed to pay the Landscape Trustee $110,000.00 in full settlement of the Landscape Trustee's assertion that Landscape's assets were transferred to RFCC and Russell M. Fragala for less than fair consideration ("Landscape Settlement Agreement"). Case No. 20-73335, ECF Nos. 30, 34. Plaintiff's counsel seeks to introduce the Landscape Settlement Agreement into evidence to address a concern raised by the Court that it might have released Plaintiff's claims against the Debtor, Russell Fragala. No objection to the introduction of these two additional exhibits was filed. The Court takes judicial notice of the Landscape Settlement Agreement and, upon review, agrees with Plaintiff's counsel that Plaintiff's claims here were not released by the Landscape Settlement. As for the Plaintiff's proposed exhibit 37, Robbie Myer's affidavit, the Court will admit it in evidence as there was no opposition to its admission, and there is nothing in the affidavit which is prejudicial to the Debtor's case.

At a hearing on September 12, 2022, Debtor's counsel's Motion to Withdraw was granted.[8]

## DISCUSSION

### A. Fragala's Debt to Myer's

The Plaintiff seeks to pierce the corporate veil under Maryland law in order to establish Fragala's personal liability for Landscape's allegedly unjustified failure to pay under the subcontracts. The Court will analyze this allegation. However, as will become clear later in this section, the outcome of this veil piercing analysis is not determinative of whether Myer's has a claim against the Debtor in this case, which claim provides the basis for the §§ 523(a)(2)(A) and (a)(6) causes of action. *See* 11 U.S.C. §§ 523(a), 101(5), (12).

---

[8] Debtor's prior counsel, Richard Kanter, also withdrew from this case as a result of Debtor's failure to pay legal fees. ECF No. 41, 48.

Bankruptcy courts adjudicating state law claims such as corporate veil piercing claims "apply the choice of law rules of the forum state." *Pereira v. Grecogas Ltd. (In re Saba Enters., Inc.)*, 421 B.R. 626, 650 (Bankr. S.D.N.Y. 2009); *accord Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 601–02 (2d Cir. 2001). Under New York choice of law rules, the law of the state of incorporation of the corporation subject to potential veil piercing governs the claim. *Pereira v. Grecogas*, 421 B.R. at 650. Landscape is incorporated in New York, so New York veil piercing laws apply.[9] In New York, the corporate veil may be pierced "either in the event of a fraud, or 'where the corporation has been so dominated by an individual or corporate parent that the subsidiary is relegated to the status of a mere shell, instrumentality, or alter ego.'" *Id.* (quoting *Wausau Bus. Ins. Co. v. Turner Const. Co.,* 141 F. Supp. 2d 412, 417 (S.D.N.Y. 2001)).

Plaintiff's allegations do not satisfy the necessary elements of corporate veil piercing under New York law. Plaintiff fails to allege that Landscape was used as a mere shield for the perpetration of a fraud, that Landscape was used to evade legal obligations, or that Fragala failed to observe the corporate form in connection with the transaction of Landscape's business. Instead, Myer's alleges that Fragala has conceded personal liability because: (1) he answered the state court complaint in his personal capacity instead of denying liability for the corporation's debts, (2) he counter-claimed against Myer's in his individual capacity, and (3) he failed to register Landscape, a New York corporation, in Maryland according to Maryland law.

Myer's named Fragala personally as a defendant in the state court complaint.[10] That Fragala answered the complaint in his individual capacity does not concede personal liability or

---

[9] Even if Maryland veil piercing laws applied, the factors and elements are substantially similar to those of New York and the outcome would be the same. *Hildreth v. Tidewater Equip. Co., Inc.,* 838 A.2d 1204, 1210 (Md. 2003).

[10] Plaintiff's belief that it could not sue Landscape because it had not registered as a foreign corporation in Maryland is erroneous. Maryland law only restrains a corporation not registered in

9

waive the protections of the corporate form. Nor does the failure to file a motion to dismiss concede liability when an answer has been filed denying all allegations in the complaint. Further, Fragala asserted the negating defenses of "the capacity to sue or be sued" and "the authority of a party to sue or be sued in a representative capacity" in accordance with Maryland Civil Procedure Rule 2-323(f). Thus, Fragala did not concede personal liability by answering the complaint in his individual capacity.

Finally, Myer's alleges Fragala is personally liable because he failed to cause Landscape to be registered in Maryland. According to Maryland law, neither a corporation nor any person claiming under the corporation may maintain a suit in any court in Maryland if it is doing or has done any intrastate, interstate, or foreign business in the Maryland without registering in Maryland unless the corporation can show that it is has paid the penalty under § 7-302 of the Maryland Corporations and Associations law and either complied with the registration requirements or is no longer doing intrastate, interstate, or foreign business in the state. Md. Code Ann., Corps. & Ass'ns § 7-301. There is no language in this statute which indicates that failure to register a foreign corporation in Maryland establishes that the corporation was used as shield in perpetration of a fraud, to evade legal obligations, or that stockholders failed to observe the corporate form. In fact, according to Maryland courts, "there is nothing in the registration statutes that permits a court to invade the corporate entity simply because of a failure to register." *Hildreth v. Tidewater Equip. Co., Inc.*, 838 A.2d 1204, 1212 (Md. 2003).

---

Maryland from suing in Maryland courts. *See* Md. Code Ann., Corps. & Ass'ns § 7-301. It does not restrain any other party from suing unregistered corporations in Maryland courts or unregistered corporations from defending those suits. *Yangming Marine Transp. Corp. v. Revon Prods. U.S.A., Inc.*, 536 A.2d 633, 636–37 (Md. 1988). Maryland law actually contemplates suits against foreign corporations in its long arm statute. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103.

Myer's refers to Fragala in each allegation of the amended complaint as if Fragala entered into the subcontracts with Myer's in his individual capacity. However, there is no evidence in the record to support these allegations. The Court declines to find Fragala liable under Plaintiff's veil piercing theory.

Nonetheless, the Court finds that Myer's has an allowed claim in this bankruptcy case. On November 19, 2019, Myer's filed a proof of claim in Fragala's bankruptcy case in the amount of $58,460.00 plus late charges at two percent (2%) per month through August 3, 2019 totaling $92,366.80 for "services performed." Proof of Claim 1-1. The proof of claim seeks to recover from Fragala the amounts sought by Myer's in the Maryland state court action. The claim has not been objected to. Under 11 U.S.C. § 502(a), in the absence of an objection, the proof of claim is "deemed allowed." This conclusion is supported by the Federal Rules of Bankruptcy Procedure which state: "A proof of claim executed and filed in accordance with [the Bankruptcy Rules constitutes] prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

Based on § 502(a) and Rule 3001(f), the Court finds that the uncontested claim filed by Myer's against Fragala is deemed allowed and is sufficient to establish Plaintiff's claim in this bankruptcy case. *See Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 530 (9th Cir. 1998) (finding that the allowance of a claim without objection under § 502(a), even in the absence of a separate order, is a final judgment giving rise to res judicata); *see also Tr. of Operating Eng'rs Local 325 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 382–83 (6th Cir. 2019) (same).

Having established that Myer's has an allowed claim in Fragala's individual bankruptcy case, and therefore a debt upon which the § 523 causes of action can be based, *see* 11 U.S.C. §§ 101(5), (12), the Court must now decide whether that claim is non-dischargeable.

### B.   11 U.S.C. § 523(a)(2)(A)

Under § 523(a)(2)(A), an individual debtor is not entitled to discharge a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ." Non-dischargeability claims must be proven by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991).

To establish false representation, Myer's must prove: "(1) the defendant made a false or misleading statement; (2) with intent to deceive; (3) in order for the plaintiff to turn over money or property to the defendant." *Miner v. Mines (In re Mines)*, 630 B.R. 107, 116 (Bankr. E.D.N.Y. 2021). False pretenses, on the other hand, requires Myer's to prove that there was "(1) an implied misrepresentation or conduct by the [defendant]; (2) promoted knowingly and willingly by the [defendant]; (3) creating a contrived and misleading understanding of the transaction on the part of the [plaintiff]; (4) which wrongfully induced the [plaintiff] to advance money, property or credit to the defendant." *Indo-Med Commodities, Inc. v. Wisell (In re Wisell)*, 494 B.R. 23, 36 (Bankr. E.D.N.Y. 2011) (quoting *Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005)) (internal quotation marks omitted). Actual fraud requires showing that "(1) the debtor made a false representation; (2) that at the time made, the debtor knew the statement was false; (3) the misrepresentation was made with an intent to deceive; (4) that the creditor reasonably relied on that misrepresentation; and (5) that the creditor was damaged as a result of the misrepresentation." *Miner*, 630 B.R. at 117.

Myer's must prove that Fragala included the Repair of Damage provision to deceive Myer's into entering into the contract with Landscape and knew at the time the subcontracts were executed that he would hold Myer's liable for damages whether or not Myer's caused them. Plaintiff has not satisfied this burden. Plaintiff did not present any evidence at trial, other than Myer's own self-serving affidavit (Ex. 38) to prove that Fragala knew when Landscape and Myer's entered into the subcontracts in November 2016 that he was going to hold Myer's liable, six months later in June 2017, for damages it did not cause. In fact, Fragala testified at trial that Myer's was only liable for the damages it caused. *See* Tr. 77–78, May 2, 2022.

While Fragala may have made false statements about the post-season damage as Myer's alleges,[11] and Fragala was unable to prove Landscape's costs to repair the alleged damage, all this would amount to is a false representation as to why Landscape failed to pay Myer's. Fragala's assertion, true or not, in June 2017 that there were post-season damages caused by Myer's does not establish that Fragala intended in November 2016 (when the contracts were entered into) or in March 2017 (when Myer's performed services) not to pay Myer's for services provided under the subcontracts. Moreover, Fragala testified that Landscape paid Myer's in full for services performed through February 2017 and only payment for services performed after the March 2017 snow event went unpaid. The Court believes, without deciding, it more than likely that after the significant snowfall event in March of 2017, the subcontracts simply became unprofitable for Landscape and Fragala decided not to, or could not, pay Myer's.[12] This was

---

[11] Fragala's statements are inconsistent with the documentary evidence introduced at trial. *Compare* Ex. 8, *with* Tr. 34–35, 72, 84, May 2, 2022.

[12] The contracts between Landscape and Brightview were "fixed-fee" contracts (Ex. 1), whereas the subcontracts between Landscape and Myer's were "per occurrence" (Ex. 2). Myer testified in a deposition that "fixed-fee" contracts for snow removal were "a gamble." Myer Depo., Aug. 31, 2021, Ex. B, 83–84.

clearly a breach of the subcontracts, but that does not mean that Myer's relied on a false representation by Fragala when it provided services to Landscape. The alleged false representation came after the services were provided and the debt incurred. Thus, the services provided by Myer's to Landscape were not "obtained by" false pretenses, a false representation or actual fraud by Fragala. 11 U.S.C. § 523(a)(2). Plaintiff's theory of Fragala's direct liability and non-dischargeability under § 523(a)(2)(A) fails.

The result would be the same even if the Court had found Fragala liable under a veil piercing theory because this case implicates at most a breach of the contract between Landscape and Myer's. A breach of contract, without more, does not give rise to a claim for non-dischargeability. *See, e.g.*, *Murphy v. Snyder (In re Snyder)*, Case No. 15-50553 (JAM), Adv. No. 15-05042 (JAM), 2017 WL 1839122, at *12 (Bankr. D. Conn. May 5, 2017) ("[T]he failure to honor one's promise is a breach of contract, but making a promise that one intends not to keep is fraud.") (citations omitted); *Wilcoxon Constr., Inc. v. Woodall (In re Woodall)*, 177 B.R. 517, 524 (Bankr. D. Md. 1995) (denying § 523 claim where debtor breached contract with the plaintiff, but the contract itself and services performed by the plaintiff pursuant to the contract were not obtained by any fraud of the debtor); *Miner*, 630 B.R. at 121. *Cf. Marcella v. ARP Films, Inc.*, 778 F.2d 112, 119 (2d Cir. 1985) (finding no evidence that defendant had no intention of performing under the contract which did not give rise to a separate claim in tort).

Congress drafted § 523 to except certain debts from discharge only in exceptional cases; exceptions to discharge should be narrowly construed in favor of the debtor. *See Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 66 (2d Cir. 2007). Section 523(a)(2)(A), broadly speaking, covers frauds which "involve moral turpitude or intentional wrong." *Cochran v. Reath (In re Reath)*, 368 B.R. 415, 422 (Bankr. D.N.J. 2006) (quoting 4 Lawrence P. King, Collier on

Bankruptcy ¶ 523.08[1][d] at 523-44.9 (15th ed. 2006)). A breach of contract claim, on the other hand, requires merely a showing of an unfulfilled promise. If proving that a debt arose from an unfulfilled promise were sufficient to establish a claim under § 523(a)(2)(A), then every breach of contract claim would be non-dischargeable. *Farina v. Balzano (In re Balzano)*, 127 B.R. 524 (Bankr. E.D.N.Y. 1991).

So, even if the Court pierced the veil and found that Landscape had no basis to withhold funds from Myer's under the subcontract that would not be sufficient basis to except the debt from discharge under § 523(a)(2)(A). For all these reasons, Plaintiff's claim of non-dischargeability under 11 U.S.C. § 523(a)(2)(A) fails.

### C.     11 U.S.C. § 523(a)(6)

Similar to the § 523(a)(2)(A) claim, Myer's argues that Fragala willfully and maliciously injured Myer's when Fragala induced Myer's to enter into the subcontracts with Landscape by including the Repair of Damage provision in the subcontracts knowing Landscape would not pay Myer's for services performed under the subcontract. Under § 523(a)(6), an individual debtor is not entitled to discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." "Willful" requires that the injury be deliberate or intentional. The injury itself must have been deliberate or intentional, not just the act that leads to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998). Willfulness is found where the debtor "knows that the consequences are certain, or substantially certain, to result from his act." *Salim v. VW Credit, Inc.*, 577 B.R. 615, 625 (E.D.N.Y. 2017) (quoting *Geiger*, 523 U.S. at 61–62)). "Malicious" is "wrongful or without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996). Malice can be implied or constructive. *Id.* at 88.

Myer's has not proven by a preponderance of the evidence that Fragala's actions were willful and malicious. In support of the proposition that Fragala intended the consequences of his actions Myer's points to a letter from Brightview which states that no post-season damage was reported and Brightview had paid Landscape in full. Ex. 9. Fragala's deposition testimony did not dispute that BrightView's records showed that the last payment to Landscape was in April 2017. Fragala Depo., Sept. 2, 2021, Ex. 3 at 156–58. Myer's argues that this conflicts with Fragala's testimony that Brightview did not pay Landscape the balance due until a year after Landscape purportedly repaired the damage allegedly caused by Myer's. *See* Tr. 155, May 2, 2022. This evidence, however, only alleges a false assertion by Fragala about why Landscape failed to pay Myer's. It does not establish that Fragala intended, upon execution of the subcontracts, that Landscape would not pay Myer's in full for the services performed. Nor does the evidence show that Fragala's actions were wrongful or without justification.

"[W]here a debtor seeks profit or some other benefit, 'the underlying conduct, however deplorable, would not give rise to liability under § 523(a)(6) in the absence of some additional, aggravating conduct on the part of the debtor of sufficient gravity to warrant an inference of actual malice under [] Second Circuit'" caselaw. *Rescuecom Corp. v. Khafaga (In re Khafaga)*, 419 B.R. 539, 550 (Bankr. E.D.N.Y. 2009) (Craig, J.) (citation omitted) (finding aggravating circumstances where defendant secretly created a competing business in contravention of a franchise agreement, actively diverted business from the plaintiff, and submitted false reports with the intention of withholding payments due under a contract); *see also Bundy Am. Corp. v. Blankfort (In re Blankfort)*, 217 B.R. 138 (Bankr. S.D.N.Y. 1998) (finding aggravating circumstances where defendant persistently, blatantly, and willfully violated court orders enjoining the underlying conduct); *Am. Honda Fin. Corp. v. Ippolito (In re Ippolito)*, Case No.

16

12-70632-ast, Adv. No. 12-8403-ast, 2013 WL 828316 (Bankr. E.D.N.Y. Mar. 6, 2013) (finding no aggravating circumstances where defendant failed to pay owed advances pursuant to a Wholesale Finance Agreement); *Salim*, 577 B.R. at 626.

As stated previously, the Court declined to pierce the veil to hold Fragala personally liable for claims against Landscape, but even if it did the facts here do not bear out aggravating circumstances which would give rise to a finding of willful and malicious injury. The Court finds Plaintiff has failed to prove willful and malicious injury under 11 U.S.C. § 523(a)(6).

## CONCLUSION

For the foregoing reasons, the Court finds that Myer's has an allowed claim in this bankruptcy case subject to offset by any distribution in Landscape's bankruptcy case. The Court also finds that Plaintiff's claim is not non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) or (a)(6). A judgment consistent with this Decision will enter forthwith.



Dated: Central Islip, New York          Robert E. Grossman
September 22, 2022                      United States Bankruptcy Judge